IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| z4 TECHNOLOGIES, INC. | § | |
| Vs. | § | CIVIL ACTION NO. 2:04CV335 |
| MICROSOFT CORPORATION, ET AL. | § | |

MEMORANDUM OPINION AND ORDER

This Claim Construction Memorandum Opinion and Order interprets the disputed terms in United States Patent Nos.: 6,044,471 (the "'471 patent") and 6,785,825 (the "'825 patent"). The case was referred to the undersigned to conduct all pretrial proceedings pursuant to 28 U.S.C. § 636.

*Background*

Plaintiff is the owner of the patents at issue by assignment. Plaintiff filed this lawsuit against Microsoft Corporation ("Microsoft") and Autodesk, Inc. ("Autodesk") alleging direct, contributory and induced infringement.

The patents at issue endeavor to reduce software piracy. Past efforts included requiring licensed users of software to enter a code that was included with the software's packaging to enable the software. Including the code with the packaging did little to prevent unlicensed users from loading the software on multiple computers. Other efforts included requiring users to contact the publisher of the software to provide registration information before receiving the code that would

enable the software. This method required the publisher to make telephone operators available for user registration and placed a burden on users. The methods described in the '471 and '825 patents attempt to balance the publisher's need to protect against unlicensed use of its software and its desire for its anti-piracy systems to be user-friendly for legitimate users. The patents associate at least two authorization codes with each copy of the publisher's software, each code enabling a separate authorization period for the software. The first authorization code is supplied with the software and enables the software, at least partially, for an initial authorization period. To obtain the second code, a user must contact the publisher or its representative and provide registration information, including computer specific information that would tie the software to a specific computer. Other features of Colvin's patents include that the user may choose either manual or electronic registration and that the software may be at least partially disabled if it is determined that a user is not authorized to use the software.

*Applicable Law*

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1317; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 338 F.3d 858, 861 (Fed. Cir. 2004) (citing cases); *Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Id.*; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary

skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1316; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*.

Claims "must be read in view of the specification, of which they are a part." *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id*. Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark*

*Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998); *see also Phillips*, 415 F.3d at 1323. The prosecution history, if it is in evidence, is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

*Discussion and Analysis*

The '471 Patent

In this patent, the undersigned is called upon to interpret the term, "instructions for automatically contacting an authorized representative of the software," found in Claim 32. The actual language and the parties' positions are charted below:

| Claim Language | z4's Construction | Defendants' Construction |
| --- | --- | --- |
| 32. A computer readable storage medium having data stored therein representing software executable by a computer, the computer including instructions to reduce use of the software by unauthorized users, the storage medium comprising:<br><br>instructions for requiring a password associated with the software;<br><br>instructions for enabling the software after the password has been communicated to the software;<br><br>instructions for subsequently requiring a new password to be communicated to the software for continued operation of the software; and<br><br>**instructions for automatically contacting an authorized representative of the software** to communicate registration information and obtaining authorization for continued operation of the software. | instructions (i.e., computer code) that enable a user's computer to contact an authorized representative of the software . . . | instructions (i.e., computer code) which enable a user's computer, without any intervention from the user, to contact an authorized representative of the software . . . |

As set forth, the parties disagree as to whether "automatically" contacting a representative requires that there be no intervention by the user.  The undersigned finds that z4's proposed construction should be adopted and "instructions for automatically contacting an authorized representative of the software" should be construed to mean "instructions (i.e. a computer code) that enable a user's computer to contact an authorized representative of the software."

At its crux, the issue is what exactly is done automatically.  Plaintiff asserts that the claim language means that contacting an authorized representative is done automatically after the user selects between automatic or manual registration.  By way of example, Plaintiff points to the

automatic transmission of a car – the driver has to select a gear and put the car in gear, but the transmission is still automatic once the driver has initiated the process and put the car in gear. Defendants, on the other hand, argue that "automatically" should be construed to mean without user intervention.

Contrary to the Defendants' argument, the undersigned finds that the claim language supports Plaintiff's construction of the term "automatically." Claim terms are given their ordinary and customary meaning, which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e. as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. A reading of the claim and the specification makes plain that the claim contemplates instructions, or computer code, for both automatically contacting an authorized representative of the software to communicate registration information and automatically obtaining authorization for continued operation of the software after the process has been initiated by the user. The claim is silent as to how the contact is initiated. The specification clearly contemplates a user choice as to whether registration will be automatic or manual. '471 patent, col. 7, ll. 7-18 ("The user is allowed to choose between automatic or manual registration."). In other words, registration does not occur without the user's knowledge or "intervention," whether the user chooses automatic or manual registration. The Phillips court emphasized that the specification is the primary basis for construing the claims. *Id.* at 1315.

Defendants look to the prosecution history of U.S. Patent No. 6,460,142, the immediate child of the '471 patent and the parent of the '825 patent for support for their asserted construction of "automatic." In response to examiner statements concerning the term "automatic," in an effort to distinguish pending application claims 23, 24 and 26-28 of the '142 patent with the Fawcett '077

patent, the applicant stated:

> Fawcett '077 does not disclose automatically contacting the authorized software representative as claimed. In contrast, the user has discretion as to when to contact the authorized representative.

Defendants would have this Court, therefore, infer that the '142 patent instructed that the software representative was contacted "automatically," without user discretion or intervention. Defendants reliance on this language, however, ignores that the applicant's statement says that the user in the '142 patent would not have discretion as to *when to contact* the authorized representative. Claim 24 of the '142 patent claims software that "automatically contacts the authorized software representative at regular intervals. The context of the use of the term "automatically" in the then pending claims of the '142 patent prosecution is different than in the '471 patent claims at issue.

Although intrinsic evidence includes the prosecution history, "it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317 (citing *Inverness Med. Switz. GmbH v. Warner Lambert Co.*, 309 F.3d 1373, 1380-82 (Fed.Cir.2002)). The prosecution history may be useful to determine whether an interpretation was disclaimed during prosecution. *Id.* Patentees show "intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1327 (Fed.Cir.2002). The undersigned finds that, as a result of the different context of the term "automatically" as used in the prosecution history of the '142 patent relied upon by Defendants, there has not been a clear disavowal of claim scope.

Having fully considered the briefing provided by the parties and the arguments at the

*Markman* hearing, the undersigned finds that the intrinsic evidence supports Plaintiff's construction, such that "instructions for automatically contacting an authorized representative of the software" should be construed to mean "instructions (i.e. a computer code) that enable a user's computer to contact an authorized representative of the software."

The '825 Patent

Claim 1 from the '825 patent contains the two disputed terms. First, the undersigned is called upon to interpret the term: "requiring the user to selectively choose either manual or electronic registration." In its briefing, Plaintiff sought a construction of "requiring a user to selectively choose between manual registration, where a person communicates registration information to the representative (over any of a variety of communication media including telephone, e-mail, mail, or fax) or electronic registration, where a computer communicates registration information to the representative (over any of a variety of communication media including the Internet)." Defendants brief requested a construction of "requiring the user to selectively choose either manual or electronic registration, where manual registration requires at least some user intervention, and electronic registration means registration that is done without any user intervention." In open court, the parties agreed to use the claim language for this term. Defendants agreed that they will not argue at trial that "electronic" means "without user intervention" without leave of Court.

The second disputed term is: "at least partially disabling the software if the user is determined to be an unauthorized user." The claim language and the parties' positions are as follows:

| Claim Language | z4's Construction | Defendants' Construction |
| --- | --- | --- |
| 1. A method for reducing unauthorized software use, the method comprising:<br><br>providing a representative to monitor software license compliance;<br><br>associating a first authorization code with the software, the first authorization code enabling the software on a computer for use by a user for an initial authorization period, the initial authorization period being based on usage of the software;<br><br>supplying the first authorization code with the software;<br><br>requiring the user to enter the first authorization code to at least partially enable the software on the computer for use by the user during the initial authorization period;<br><br>requiring the user to contact the representative for retrieval of at least one additional authorization code to repeat the enablement of the software on the computer for use by the user during a subsequent authorization period beyond the initial authorization period and allowing the repeat of the enablement of the software to be performed prior to the expiration of the initial authorization period so the enablement of the software can be continuous from the initial authorization period to the subsequent authorization period, the software being enabled on the computer for use by the user during the subsequent authorization period without requiring further communication with the representative following entry of at least one additional authorization code;<br><br>requiring the user to selectively choose either manual or electronic registration and provide registration information to the representative prior to retrieval of the at least one additional authorization code, the registration information including computer specific information;<br><br>and **at least partially disabling the software if the user is determined to be an unauthorized user.** | partially or completely limiting the functionality of the software unless the user is determined to be an authorized user | partially or completely limiting the functionality of the software if the user is determined to be an unauthorized user |

The undersigned finds that the Defendants' construction should be adopted, except that "functionality" should be changed to "use," such that the term should be construed to mean "partially or completely limiting the use of the software if the user is determined to be an unauthorized user."

The parties agreed at the *Markman* hearing on substituting "use" for "functionality" for purposes of simplification. Although the claim states that the software is limited "if the user is determined to be an unauthorized user," Plaintiff now wishes to construe the claim such that the software's use will be limited "unless the user is determined to be an authorized user." Plaintiff expresses concern that Defendant's construction would require the representative authority to make an affirmative determination that a particular user is "unauthorized." For example, the representative would have to determine that a particular user is a known pirate.

The "claims are 'of primary importance, in the effort to ascertain precisely what it is that is patented." *Phillips*, 415 F.3d at 1312 (quoting *Merrill v. Yeomans*, 94 U.S. 568, 570, 24 L.Ed. 235 (1876)). As stated previously, however, claims must also be read in light of the specification. The specification, which is usually dispositive, "is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996). The claim and the specification do not support a construction that would require an affirmative determination that a particular user is unauthorized because he is a known pirate. For example, Claim 53 includes, "comparing previously stored registration information related to at least one of the software, the user, and the computer with the registration information provided by the user to the representative to determine if the user is an authorized or an unauthorized user." '825 patent, col. 19, ll. 30-34. The same language appears in Claim 57. The specification further states that the "[a]dministrator 24 may

compare the current registration information 50 with previously received information to determine if at least a portion of the information matches for that particular serial number or group of serial numbers. This comparison may be used to determine whether the end user is an authorized user or an unauthorized user." '825 patent, col. 5, l. 67 - col. 6, l. 6. The plain language of the specification does not contemplate that the claim language as written – "at least partially disabling the software if the user is determined to be an unauthorized user" – requires an affirmative finding that the user attempting registration is known to be unauthorized because he is, for example, a known pirate. Whether a particular user is unauthorized may clearly be determined by finding either that the user is authorized or unauthorized. The undersigned, therefore, finds that the Defendant's construction should be adopted, with the exception that "use" should replace "functionality," such that the term should be construed to mean "partially or completely limiting the use of the software if the user is determined to be an unauthorized user." It is accordingly

**ORDERED** that the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the claim interpretations are set forth in a table as Appendix B. The claims with the disputed terms in bold are set forth in Appendix A.

So **ORDERED** and **SIGNED** this **20** day of **September, 2005.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE

## APPENDIX A

U.S. Patent No. 6,044,471

32. A computer readable storage medium having data stored therein representing software executable by a computer, the computer including instructions to reduce use of the software by unauthorized users, the storage medium comprising:

instructions for requiring a password associated with the software;

instructions for enabling the software after the password has been communicated to the software;

instructions for subsequently requiring a new password to be communicated to the software for continued operation of the software; and

**instructions for automatically contacting an authorized representative of the software** to communicate registration information and obtaining authorization for continued operation of the software.

## U.S. Patent No. 6,785,825

1. A method for reducing unauthorized software use, the method comprising:

providing a representative to monitor software license compliance;

associating a first authorization code with the software, the first authorization code enabling the software on a computer for use by a user for an initial authorization period, the initial authorization period being based on usage of the software;

supplying the first authorization code with the software;

requiring the user to enter the first authorization code to at least partially enable the software on the computer for use by the user during the initial authorization period;

requiring the user to contact the representative for retrieval of at least one additional authorization code to repeat the enablement of the software on the computer for use by the user during a subsequent authorization period beyond the initial authorization period and allowing the repeat of the enablement of the software to be performed prior to the expiration of the initial authorization period so the enablement of the software can be continuous from the initial authorization period to the subsequent authorization period, the software being enabled on the computer for use by the user during the subsequent authorization period without requiring further communication with the representative following entry of at least one additional authorization code;

requiring the user to selectively choose either manual or electronic registration and provide registration information to the representative prior to retrieval of the at least one additional authorization code, the registration information including computer specific information;

and **at least partially disabling the software if the user is determined to be an unauthorized user.**

## APPENDIX B

U.S. Patent No. 6,044,471

| Claim Language | Court's Construction |
|---|---|
| 32. A computer readable storage medium having data stored therein representing software executable by a computer, the computer including instructions to reduce use of the software by unauthorized users, the storage medium comprising:<br><br>. . .<br><br>**instructions for automatically contacting an authorized representative of the software** to communicate registration information and obtaining authorization for continued operation of the software. | instructions (i.e., computer code) that enable a user's computer to contact an authorized representative of the software . . . |

U.S. Patent No. 6,785,825

| Claim Language | Court's Construction |
|---|---|
| 1. A method for reducing unauthorized software use, the method comprising:<br><br>. . .<br><br>**requiring the user to selectively choose either manual or electronic registration** and provide registration information to the representative prior to retrieval of the at least one additional authorization code, the registration information including computer specific information; . . . | [AGREED]<br>requiring the user to selectively choose either manual or electronic registration . . . |
| . . . **at least partially disabling the software if the user is determined to be an unauthorized user.** | partially or completely limiting the use of the software if the user is determined to be an unauthorized user. |